# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**POSTEL INDUSTRIES, INC.,**

        **Plaintiff,**

**-vs-**                                    **Case No.  6:11-cv-1179-Orl-28DAB**

**ABRAMS GROUP CONSTRUCTION,**
**L.L.C., ROGERS, LOVELOCK & FRITZ,**
**INC., ELLERBE BECKET, INC., and**
**RLF/ELLERBE BECKET JOINT**
**VENTURE,**

        **Defendants.**

_____

## REPORT AND RECOMMENDATION AND ORDER

**TO THE UNITED STATES DISTRICT COURT**

        This cause came on for consideration without oral argument on the following motions filed

herein:

| | |
|---|---|
| **MOTION:** | **JOINT MOTION TO STAY ALL FURTHER PROCEEDINGS PENDING ARBITRATION [IN A RELATED MATTER] (Doc. 117)** |
| **FILED:** | **November 19, 2012** |
| THEREON it is **RECOMMENDED** that the motion be **GRANTED**. | |
| **MOTION:** | **JOINT MOTION FOR EXTENSION OF CASE MANAGEMENT AND SCHEDULING ORDER DEADLINES OR, IN THE ALTERNATIVE, FOR AN ADDITIONAL CASE MANAGEMENT CONFERENCE (Doc. No. 119)** |
| **FILED:** | **November 29, 2012** |
| THEREON it is **ORDERED** that the motion is  **DENIED** as moot. | |

| | |
|---|---|
| **MOTION:** | **UNOPPOSED JOINT RENEWED MOTION TO EXTEND TIME TO RESPOND TO CERTAIN DEADLINES AND REQUEST AN ADDITIONAL CASE MANAGEMENT CONFERENCE (Doc. No. 143)** |
| **FILED:** | **February 28, 2013** |

**THEREON** it is **ORDERED** that the motion is **DENIED** as moot.

This case is one of many arising out of construction projects related to the building of the Department of Veterans Affairs Medical Center in Southeast Orlando, which was designed to be implemented in six phases or "packages"; several other cases arising out of the construction projects have been stayed pending arbitration[1]. *See* Doc. 136. Three of the Defendants – who Plaintiff Postel alleges defectively designed the project – now move for a stay of the case pending the completion of Postel's arbitration with the prime contractor, arguing that the arbitration will resolve whether Postel breached its subcontract and whether Postel has any liability for damages arising out of its work on the Project. Postel opposes a stay, contending the issues in the two proceedings are completely independent. Because the Court finds the arbitration and this litigation share a common core of facts and issues, it is respectfully **RECOMMENDED** that the stay be **GRANTED** and the case be administratively closed until the conclusion of Postel's arbitration on its subcontract.

## I.  BACKGROUND FACTS

The United States Department of Veterans Affairs (the "VA") entered into contracts with Rogers, Lovelock & Fritz, Inc., Ellerbe Becket, Inc., and RLF/Ellerbe Becket Joint Venture (collectively the "Joint Venture") to design a project commonly known as the Hospital, Clinic and Atrium, Package at the VA Medical Center, 13800 Veterans Way, Orlando (the "Project"), including

---

[1]At least seventeen separate cases arising out of the VA Medical Center construction have been filed. Case Nos. 6:11-cv-886; 6:11-cv-1122; 6:11-cv-1179; 6:11-cv-1708; 6:11-cv-1717; 6:11-cv-1983; 6:11-cv-1959; 6:11-cv-2024; 6:12-cv-182; 6:12-cv-201; 6:12-cv-314; 6:12-cv-1228; 6:12-cv-1282; 6:12-cv-1311; 6:12-cv-1577; 6:12-cv-1592; 6:12-cv-1786. Of those, four cases arising from the same phase of the Project have been stayed.

the preparation of plans and specifications. Doc. 109 ¶¶ 9-10.  The VA also entered into a contract

with Brasfield & Gorrie, LLC ("B&G"), to serve as the general contractor for the construction of the

Project.  Doc. 109 ¶ 14.  Postel used the Joint Venture's plans and specifications to bid the steel

fabrication and steel erection work for the Project to B&G.  Doc. 109 ¶ 13.  In September 2010, B&G

entered into a subcontract with Postel to provide and erect fabricated steel on the Project.  Doc. 109

¶ 15.  On August 2, 2011, Postel's subcontract with B&G was terminated before the work was

completed, allegedly because Postel abandoned the Project.  Doc. 118-1.  B&G stated in the

termination letter to Postel:

> B&G appreciates the challenges it and Postel, and the other subcontractors, have
> encountered as a result of the many deficiencies in the plans and specifications
> provided by the VA for this Project. [Postel] can rest assured that B&G continues to
> put the VA on notice of these deficiencies and the impacts that they have caused (and
> continue to cause) on the entire construction team.   But, as a sophisticated
> subcontractor with purported experience on other federal projects, Poste should well
> be aware that design deficiencies even like those complained of by Postel very rarely
> serve to permit a contractor's abandonment of a federal construction project.

Doc. 118-1 at 2-3.

On September 23, 2011, Postel filed suit against the designers of the Project, the Joint Venture

asserting that Postel relied on the Joint Venture's designs, plans, and specifications when it submitted

its bid for the Project to B&G, and mistakes, errors, and omissions by the Joint Venture led Postel to

incur additional costs in excess of $10 million[2].  Doc. 109 ¶ 19, 25.  On October 10, 2012, Postel filed

a Second Amended Complaint and Request for Declaratory Relief.  Doc. 109.

B&G has filed an arbitration proceeding now pending before the American Arbitration

Association[3].  On November 19, 2012, the Joint Venture filed its Joint Motion to Stay All Further

---

[2]Postel has also brought claims against a second-tier subcontractor, Abrams Group, LLC, asserting that the
subcontractor made certain false claims for payment; Abrams Group, LLC has also brought a Third Party Complaint
against Mosley, a first-tier subcontractor to Postel.

[3]Case No. 33 110 Y 00127.  *See* Doc. 118-1 at 12.

-3-

Proceedings Pending Arbitration.   Doc. 117.   Postel filed its Response, along with 15 separate attachments, on December 3, 2013.   Docs. 120 to 135.   The parties jointly moved to extend certain deadlines in the case twice, first on November 29, 2012 and most recently on February 28, 2013. Docs. 119, 143.

## II. STANDARD FOR STAY OF LITIGATION

As an initial matter, Postel cites the wrong standard for the granting of a temporary stay – the *Colorado River* complete abstention doctrine, which applies only when an identical state court case is proceeding – for application to this case.   Postel mistakenly relies on the discussion *Moses H. Cone Memorial Hospital v. Mercury Construction Corporation*, 460 U.S. 1 (1983), in which the Supreme Court found a federal trial court should only abstain, or "surrender jurisdiction" in a federal case in favor of an identical parallel state proceeding when "extraordinary circumstances" exist.   *See* Doc. 120 at 6 (discussing abstention cases).   The standard for dismissal of a case on grounds of abstention is inapposite here, where there is no "parallel state proceeding" and the moving party is *not* required to show "extraordinary circumstances" for the federal court to "surrender jurisdiction" to allow the concurrent, parallel state proceeding to be the one to decide the issue between the parties.   *Id*. at 25-26.   Accordingly, Postel's four pages of analysis applying the wrong standard does not apply to the facts of this case.   *See, e.g., St. Paul Fire & Marine Ins. Co., Inc. v. La Firenza, LLC*, 2007 WL 2010759, *2 (M.D. Fla. July 6, 2007) (holding abstention doctrine did not apply to stay of declaratory judgment action where there was no pending state court litigation); *American Cas. Co. of Reading, Penn. v. Sanders Hyland Corp.*, 2007 WL 841743, at *6 (S.D. Ala. March 16, 2007) (holding where there was no parallel state proceeding, the abstention doctrine was inapplicable).

Instead, the Court has discretion to grant a temporary stay based on a "variety of circumstances" pending resolution of a connected or related case in another tribunal or setting as set

forth in *Ortega Trujillo v. Conover & Company Communications*, 221 F.3d 1262, 1264 (11th Cir.

2000); *Advanced Bodycare Solutions, LLC v. Thione Int'l, Inc.*, 524 F.3d 1235, 1241 (11th Cir. 2008)

("[D]istrict courts have inherent, discretionary authority to issue stays in many circumstances.").  A

stay is authorized simply as a means of controlling the district court's docket and managing cases

before the district court. *Ortega Trujillo*, 221 F.3d at 1264 (citing *Clinton v. Jones*, 520 U.S. 681, 707

(1997) (discussing district court's "broad discretion to stay proceedings as an incident to its power

to control its own docket")); *see also Landis v. North American Co.,* 299 U.S. 248, 254 (1936)

(holding the district court has broad discretion to stay proceedings incident to its power to control its

own docket with economy of time and effort for itself, for counsel, and for litigants).

 The Supreme Court has distinguished the abstention doctrine's heightened considerations from

the trial court's discretionary considerations when a binding *arbitration* is proceeding on related or

similar issues, noting: "In some cases, of course, it may be advisable to stay litigation among the non-

arbitrating parties pending the outcome of the arbitration. The decision is one left to the district court

. . . *as a matter of its discretion to control its docket*." *Moses Cone*, 460 U.S. at 20 n. 23 (emphasis

added).  Parties to the two cases need not be the same and issues need not be identical to empower

a court to stay proceedings in one suit to abide proceedings in the other.  *Landis*, 299 U.S. at 255.

 The scope of the stay, including its potential duration and reasonable time limits, are factors

the court must consider.  *Ortega Trujillo*, 221 F.3d at 1264; *CTI–Container Leasing Corp. V.*

*Uiterwyk Corp.*, 685 F.2d 1284, 1288 (11th Cir. 1982); *Myron v. Rodriguez*, 2008 WL 516753, *3

(M.D. Fla. 2008) (granting stay during the concurrent appeals on the constitutionality of the same

statute brought by others); *Danner Const. Co., Inc. v. Hillsborough County,* 2009 WL 3055315, *1-2

(M.D. Fla. 2009) (stay of state law claims remaining in federal case warranted during appeal of

dismissal of federal claims).

In contract cases, courts have found it appropriate to stay the litigation between even the non-contracting parties when "questions of fact common to all actions pending in the [federal lawsuit] are likely to be settled during the . . . arbitration." *American Home Assurance Co. v. Vecco Concrete Const. Co.*, 629 F.2d 961, 964 (4th Cir. 1980). Under these circumstances, considerations of judicial economy and avoidance of confusion and possible inconsistent results may militate in favor of staying the entire action. *Id. See also Nederlandse*, 339 F.2d at 441 (explaining that stay may be appropriate "where the pending proceeding is an arbitration in which issues involved in the case may be determined"). Another court considering a stay in a multi-party case also looked at such factors:

> There is now arbitration pending, and it should be given priority to the extent it is likely to resolve issues material to this lawsuit. On the other hand, the lawsuit involves more parties and claims than the arbitration. In a complex, multi-party dispute of this type, issues such as the risk of inconsistent rulings, the extent to which parties will be bound by the arbitrators' decision, and the prejudice that may result from delays must be weighed in determining whether to grant a discretionary stay, and in fashioning the precise contours of any stay.

*AgGrow Oils, L.L.C. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 242 F.3d 777, 783 (8th Cir. 2001).

The burden of demonstrating the wisdom of the stay is on the party seeking the stay, in this case, the Joint Venture. *See Landis*, 299 U.S. at 255. The applicant for a stay must show hardship or inequity in being required to go forward, if there is a fair possibility that the stay will cause damages to someone else. *Landis*, 299 U.S. at 255.

**ANALYSIS**

*Avoidance of inconsistent results and confusion*

Concurrent with this federal court litigation, Postel is arbitration with B&G arising out of the same construction Project at issue here. The Joint Venture moves for the Court to stay this case pending the completion of Postel's arbitration with B&G, arguing that the B&G Arbitration will

resolve whether Postel breached its subcontract with B&G on the Project and whether Postel is liable

to B&G for the costs that B&G incurred in hiring replacement subcontractors, including SteelFab, Inc.

to complete Postel's work, which was allegedly at least $1 million more than the initial contract

between Postel and B&G.  The Joint Venture argues that until the arbitration between Postel and B&G

is completed, it will be unknown whether, and to what extent, Postel has been compensated for the

very same damages that Postel seeks from the Joint Venture in this lawsuit.

The Joint Venture contends that, to the extent that Postel's individual change order request

claims allegedly arise from design errors or omissions, Postel would be entitled to a change order

from B&G for that work, and B&G would be entitled to a change order from the VA. Postel did not

receive change orders for certain parts of this work because B&G concluded that Postel breached its

subcontract when Postel walked off the Project, thereby entitling B&G to hold further payments to

Postel. Doc. 118-1 at 38-48 (October Parmer Dep. at 14).  If the B&G Arbitration concludes that

Postel breached its subcontract, the Joint Venture argues that some portion of Postel's change order

requests would arise from Postel's breach of the subcontract.

The Joint Venture reasons that, had Postel not breached its subcontract, Postel would have

been entitled to change orders for work based on the alleged design errors and omissions and in fact

Postel has already received payment for such change orders and these do not give rise to any damages.

The change order requests which do form the basis for damages claims may be based on the

intervening, superseding breach of the subcontract by Postel. Thus, until the question of Postel's

breach of its subcontract is resolved, Postel can never prove by a preponderance of the evidence that

its change order request damages are the proximate result of any design error or omissions by the Joint

Venture as opposed to Postel's own breach of contract.  Doc. 117 at 11  (citing *Aldon Industries, Inc.*

*v. Don Myers & Associates, Inc.*, 517 F.2d 188, 191 (5th Cir. 1975)).  Until the arbitration is resolved,

the most that Postel can argue is that those damages resulted *either* from design errors and omissions, *or* from Postel's breach of its subcontract, but neither can be said to be more likely than the other, and therefore neither of the options can be established by a preponderance of the evidence.

Postel argues that its only hope of getting redress for the Joint Venture's allegedly faulty plans and specifications is through the lawsuit because Postel cannot assert a claim directly against B&G for the faulty design[4]. Thus, Postel's claim against the Joint Venture could not possibly be resolved in the Arbitration Proceeding. Postel argues that the "sole" issue in the Arbitration is whether Postel must pay for the cost B&G to paid to SteelFab, Inc. to finish the job. Doc. 120 at 4. Postel also argues that the Court should not stay the case awaiting the outcome of the B&G Arbitration because "the issues and parties are different, the proceedings will have different witnesses, different presentation of relevant facts, and different damages." Doc. 120.

Postel filed a general denial to B&G's claims in the Arbitration. Doc. 121 at 13-14. However, after the Joint Venture filed the Motion to Stay, Postel agreed to drop the $5 million in back charge damages to which it may be liable to B&G in a blatant effort "to avoid the Joint Venture's Motion" requesting stay. Doc. 120 at 3.   Nevertheless, Postel continues to assert change order request claims in this federal lawsuit, which it alleges total approximately $3.5 million[5]. Doc. 120 at 3. Postel contends that the change orders were necessitated by work Postel had to do based on the Joint Venture's defective designs. Doc. 120 at 4. Postel alleges that it submitted the change orders, which

---

[4]The Court notes that Postel theoretically could have asserted a claim against the VA for supplying defective plans (*see* Doc. 118-1 at 8), and the VA could have asserted claims against the Joint Venture for alleged design flaws and against B&G and potentially Postel for delays; the parties could then have asserted third-party or cross claims against the Joint Venture.

[5]The major component of Postel's damages claim is for change order requests that Postel made to B&G during the course of the Project. Other than the back charge and the change order requests, the only other damage claim by Postel in the litigation is for increased administrative costs, a claim that Postel's corporate representative estimated to be approximately $50,000. October Parmer Depo at 261-62; Doc. 120 at 3-4.

remain unapproved and unpaid by B&G, as a direct result of the Joint Venture's inadequate plans and specifications.  Doc. 109 ¶ 19, 23, 25; Doc. 120 at 3.

Although Postel attempts to distinguish the facts of the two proceedings by arguing that B&G's Arbitration claim for the cost of hiring a replacement subcontractor is distinguishable from the issues in this case, it cannot.  While B&G asserts in the Arbitration that Postel is liable to B&G for the costs expended[6] to perform the remainder of Postel's post-abandonment steel erection work, B&G also alleges that the costs include amounts resulting from "the defective design supplied by the VA".  Doc. 118-1 at 14 ¶ 21.  Postel has answered with a general denial requesting that B&G be required to prove its claims as required by law.  Doc. 121 at 14.

The core issue is the same in the two proceedings:  whether Postel should have been paid for the change order requests for additional work Postel had to perform, allegedly due to design defects, leading up to its termination on the Project.  Doc. 118-1 at 38-48 (October Parmer Dep. at 17-18) ("I believe all of these [change orders] are extra work that was required from items missing from the design. Brasfield & Gorrie should pay Postel for it.").  In correspondence at the time of Postel's alleged abandonment of the job in August 2011, Postel contended that B&G's failure to pay Postel for the additional costs incurred constituted a breach of the subcontract between Postel and B&G, which will be Postel's position at the Arbitration.  Doc. 118-1 at 7-10.

Based on B&G's statement of claims, B&G and Postel will be arbitrating the issue of costs arising from the "defective design supplied by the VA."  Thus, the nature and the quantity of Postel's costs arising from the "defective design" supplied by the VA may well have a preclusive effect on the issues in Postel's claims against the VA's designers – the Joint Venture – especially if Postel is found

---

[6]At the time the Arbitration was expended, the costs totaled $1 million but the performance of the work was continuing.  Doc. 118-1 at 14.  B&G also sought to recover a $70,000 penalty paid to the Department of Labor for a sub-subcontractor (Mosley's) alleged failure to pay wages required under its subcontract.  Doc. 118-1 at 15.

not liable for certain of B&G's costs due to design defects.  Even if the parties are not bound by the entirety of the Arbitrators' decision litigating the issues here before the arbitration could readily create inconsistent results with the instant litigation, or at very least, create confusion on the issue.

As the Joint Venture argues, Postel contends that B&G (and indirectly the VA) is liable for the same change order requests. The Joint Venture argues that forcing it to litigate the damages from the change orders at the same time the B&G Arbitration is pending, causes the Joint Venture hardship and inequity because it is being forced to litigate damages whose existence and quantum cannot be ascertained until the conclusion of the B&G Arbitration.  The Joint Venture argues that the amount of damages is speculative at this point because, until the B&G Arbitration is concluded, Postel will not actually incur these damages.  If the B&G Arbitration results in a finding that Postel did not breach its subcontract, all or a substantial part of the change orders will be allowed, and Postel will not incur the damages it has claimed – against both B&G in the Arbitration and against the Joint Venture in this litigation.  The Joint Venture points to testimony by a representative of Postel that B&G passed on certain of Postel's change order requests to the VA, and a portion of these change order requests were actually approved by the VA, resulting in approved change orders between B&G and Postel; funds received by Postel for any approved change orders were then credited against its claimed damages sought against the Joint Venture.  Doc. 118-2 at 30-45 (April 2012 Parmer Dep.) at 154-56.

Stays in multi-party construction cases with parallel arbitration proceedings are not unusual. *See, e.g., Odell Associates, Inc. v. Alton Ochsner Medical Foundation*, 2002 WL 10465 (E.D. La. 2002) and *Dynalectric Co. v. Westinghouse Elec. Corp.,* 803 F.Supp. 985, 992-93 (D.N.J. 1992).

In this Court, at least four other cases involving claims arising from this same Project one – with B&G as the general contractor – have already been stayed pending Postel's arbitration with

B&G. *See United States ex rel. Postel Erection Group, LLC v. Travelers Cas. & Ins. Co. of America*, Case No. 6:12cv182-37DAB; *United States ex rel. CSR Nationwide, Inc. v. Postel, Ind., Inc.*, Case No. 6:12cv201-22DAB; *United States ex rel. Postel Ind., Inc. v. Travelers Cas. and Surety Co. of America*, Case No. 6:12cv1228-37DAB; *United States ex rel. Florida Aluminum and Steel, Inc. v. Brasfield & Gorrie, LLC*, Case No. 6:12cv1786-31DAB.

In *United States ex rel. Postel Erection Group, LLC v. Travelers Cas. & Ins. Co. of America*, Case No. 6:12cv182-37DAB, Judge Dalton granted a stay of the Miller Act litigation between Postel Erection Group, L.L.C., a second tier subcontractor[7], and the several surety companies which had issued payment bonds guaranteeing payment by B&G to subcontractors. Postel Erection Group alleged that it was a subcontractor to Postel Industries, Inc. on the Project, and that B&G had not properly paid for work performed by Postel Erection Group, for a total of $1.5 million in labor[8]. Judge Dalton granted the stay:

> In this case, the Court concludes a stay would promote judicial economy and efficiency. Plaintiff's claims are commingled with the facts and circumstances being litigated in the arbitration proceeding. The arbitration claims include, inter alia, an allegation that "[Postel] and its subcontractors, including CSR, PEG [i.e, Postel Erection Group, L.L.C.], Mosely, and others abandoned the project without cause." (Doc. No. 43-3.) Thus, it appears likely that resolution of the arbitration claim may be necessary to establish the amount "justly due" Plaintiff.

> Moreover, while the Court need not determine the precise relationship between Postel Erection Group, L.L.C. and Postel Industries, Inc., it is sufficiently clear on this record that it would be problematic to allow the parties in this action to litigate while the arbitration proceeding is ongoing. Not only would there be the possibility of inconsistent outcomes, but also the parties would incur unnecessary expenses. Staying

---

[7]In Case No. 6:12-cv-182-37DAB, Postel Erection Group, LLC, contended that it was not paid by the first-tier subcontractor, Postel Industries, Inc. and sued Postel's sureties under the Miller Act, 40 U.S.C. § 3131, which provides a subcontractor with the right to sue a surety on a contractor's payment bond. Judge Dalton noted in the order staying the case that the relationship between Postel Erection Group, L.L.C. and Postel Industries, Inc. was murky and the companies appeared to be closely-related, sharing certain management and employees. Doc. 53.

[8]The Joint Venture points out that a portion of the labor was on change order request work that forms the basis of Postel's claims in this litigation. Doc. 118-2 at 38-48 (April Parmer Dep. at 190-91).

Plaintiff's claim in this action ensures that a decision in either proceeding will not impact the outcome of the other.

Case No. 6:12-cv-182-37DAB, Doc. 53 at 3-4.  The three other cited Middle District cases were similarly stayed without substantive order; thus, every case in the Middle District involving B&G as general contractor on the Project has been stayed[9].

### Simplified issues and judicial economy

The Joint Venture argues that a stay in the litigation would promote judicial economy because it would allow the Court to avoid using resources in presiding over the litigation of issues that may become entirely irrelevant for damages that may never manifest.  Postel argues that there would be no judicial economy in granting the stay because the litigation and the B&G Arbitration concern different issues.  For the reasons explained in detail above, the core issue in both proceedings is the same and it would serve judicial economy to stay the proceedings in this Court.

### Injury to non-movant Postel, based on duration of the stay

In a single paragraph, Postel contends that any delay in the case will cause it injury.  It has already been more than two years since Postel first encountered problems with the Joint Venture's plans and specifications associated with the Project[10], Postel argues, and the time has come for adjudication of its claims against the Joint Venture.  Doc. 120 at 11.  Postel contends that it is a relatively small company that needs payment for its services to continue to survive; continued delay from a stay will only cause additional injury to Postel and yet yield no information for the benefit of the case and will not promote judicial economy.

---

[9]Two others Middle District cases arising out of the same Project, with B&G as general contractor, have been dismissed voluntarily. *United States of America ex rel. Ace Staffing, Inc. v. Florida Alum. and Steel, Inc.*, Case No. 12-cv-1577-37 KRS; *Equity Builders of Florida, LLC v. Brasfield & Gorrie, LLC*, Case No. 12-cv-1592-36GJK

[10]Postel apparently waited for some time after encountering problems before filing suit against the Joint Venture in September 23, 2011.

-12-

The Joint Venture is requesting the stay until such time as the B&G Arbitration concludes, arguing that there is a date certain in requesting that the stay be tied to the termination of the B&G Arbitration proceeding.  Doc. 117. Although the parties do not address the length of the B&G Arbitration with any certainty, it appears Postel believes it will take at least until December 2013 to finish.  Postel opposes any stay of the case, arguing that discovery in this case has been going on for the last year, and was originally set to close on March 1, 2013; the case was originally set for trial on September 3, 2013.  Doc. 120.  The parties have subsequently twice moved to extend these deadlines (Docs. 119, 143), mooting Postel's argument as to the untimeliness of the stay.  Moreover, any stay of the case pending the outcome of the B&G Arbitration would not be open-ended or "immoderate" in length, but would be tied to the date-certain termination of the B&G Arbitration proceeding.

## *Conclusion*

For the reasons stated above, the Court finds a stay to be warranted in this case.  It is respectfully **RECOMMENDED** that the Joint Venture's Motion to Stay All Further Proceedings Pending Arbitration (Doc. 117) be **GRANTED** and the case be administratively closed until the conclusion of Postel's arbitration on its subcontract, with the parties ordered to file periodic status reports.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on March 29, 2013.

*David A. Baker*
_____
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy